**GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY, Appellant,**

v.

**AMALGAMATED TRANSIT UNION, LOCAL 268, Appellee.**

[Cite as *Greater Cleveland Regional Transit Auth. v. Amalgamated Transit Union, Local 268* (2001), 141 Ohio App.3d 33.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77778.

Decided Jan. 22, 2001.

*Sheryl King Benford* and *Bruce E. Hampton,* for appellant.

*Robert E. Sweeney Co., L.P.A.,* and *Robert E. Davis,* for appellee.

TIMOTHY E. MCMONAGLE, Judge.

Appellant, Greater Cleveland Regional Transit Authority ("GCRTA"), appeals from the trial court judgment confirming an arbitrator's award reinstating Bruce Allen to his position of bus operator. Appellant contends that the trial court erred in confirming the award because the arbitrator's award violates public policy and fails to draw its essence from the collective bargaining agreement. We disagree and affirm the judgment of the trial court.

Appellant provides public transportation in the city of Cleveland and throughout Cuyahoga County, Ohio. Appellee, Amalgamated Transit Union, Local 268, represents certain of appellant's employees, including its bus and rail operators. The collective bargaining agreement between appellant and appellee, effective August 1, 1997 to July 31, 2000, provided that "violations of rules and regulations necessary to effect adequate and efficient operation in the public interest will constitute just cause for discipline or discharge." It further provided for a four-step grievance procedure leading to "final, binding, and conclusive" arbitration.

On February 17, 1998, appellant implemented a revised version of its drug and alcohol policy for safety-sensitive employees, entitled "Greater Cleveland Regional Transit Authority Substance Abuse Testing Policy for Safety–Sensitive Positions." The Substance Abuse Testing Policy expressly incorporated the requirements and procedures set forth in the Drug–Free Workplace Act of 1988 and the regulations promulgated by the Department of Transportation at Title 49 of the Code of Federal Regulations.[1]

Section 654.33, Title 49, C.F.R. specifies what a mass transit employer should do in the event of a non-fatal accident:

"(2) Nonfatal Accidents

"(i) As soon as practicable following an accident not involving the loss of human life, in which the mass transit vehicle involved is a bus, electric bus, van, or automobile, the employer shall test each covered employee operating the mass transit vehicle at the time of the accident unless the employer determines, using the best information available at the time of the decision, that the covered employee's performance can be completely discounted as a contributing factor to the accident. * * *"

Appellant's revised Substance Abuse Testing Policy provides:

"**III. Required Testing by Federal Regulation**

---

1. The union apparently acquiesced in these work rules and, as far as the record discloses, did not challenge them or make them the subject of collective bargaining.

"* * * Drug and/or alcohol testing will be performed under the following circumstances:

"* * *

"—When an employee is involved in a fatal or non-fatal accident (see section VIII of this policy).

"**IV. Required Testing by GCRTA**

"The following conditions will require drug and alcohol testing as determined by Greater Cleveland Regional Transit Authority:

"* * *

"—When an employee is involved in a non-fatal accident that is specifically noted as required by GCRTA (see section VIII of this policy).

"* * *

"**VIII. Post Accident Testing**

"The FTA regulations require drug and alcohol testing in the case of certain mass transit accidents. Post accident testing is mandatory where there is a loss of life and for other non-fatal accidents. In the event of a non-fatal accident, according to the FTA, the burden rests with the Authority to prove that an employee did not contribute to the accident. In determining whether testing will occur, FTA testing requirements have priority over GCRTA testing requirements.

"According to the FTA an 'accident' is defined as an occurrence requiring drug and alcohol testing:

"* * *

"—When all covered employees operating the mass transit vehicle cannot be completely discounted as a contributing factor * * *.

"* * *

"In the event of a non-fatality accident, all covered employees operating the mass transit vehicle unless their performance can be completely discounted as a contributing factor based on the best information available at the time of the decision and all other covered employees whose performance could have contributed to the accident will be subject to FTA drug and alcohol testing.

"**Alcohol testing time frame:**

"The FTA specifically requires that post accident testing be administered as soon as practicable following the accident. Every attempt should be made to complete alcohol testing with two (2) hours of the accident. * * *

"GCRTA policy warrants post accident testing when an employee either contributed to or cannot immediately be discounted from contributing to the accident, involving:

"* * *

"—A fixed object

"* * *

## "XII. Prohibited Behavior

"According to the Drug Free Workplace Act of 1988, employees are prohibited from engaging in the unlawful manufacture, distribution, dispersion, possession and use of controlled substances in the workplace. It is the policy of GCRTA that the use, sale or possession of drugs or alcohol while on duty will result in immediate discharge. * * *

"As required by FTA's regulations GCRTA is required to identify behavior that constitutes a refusal to submit to drug and alcohol testing. In compliance with this requirement the following behavior constitutes refusal:

"* * *

"—any employee who has an inability to provide sufficient quantities of breath or urine to be tested without any medical justification by an Authority designated physician,

"* * *

"All of these actions constitutes a refusal and has the same consequences as a positive test. The employee will be immediately discharged. * * *"

Section 40.69, Title 49, C.F.R. specifies how an employer should proceed if an employee attempts but fails to provide an adequate amount of breath on a breathalyzer test:

"(d) If the employee attempts and fails to provide an adequate amount of breath, the employer shall proceed as follows:

"* * *

"(2) The employer shall direct the employee to obtain, as soon as practical after the attempted provision of breath, an evaluation from a licensed physician who is acceptable to the employer concerning the employee's medical ability to provide an adequate amount of breath.

"(i) If the physician determines, in his or her reasonable medical judgment, that a medical condition has, or with a high degree of probability, could have, precluded the employee from providing an adequate amount of breath, the employee's failure to provide an adequate amount of breath shall not be deemed a

refusal to take a test. The physician shall provide to the employer a written statement of the basis for his or her conclusion.

"(ii) If the licensed physician, in his or her reasonable medical judgment, is unable to make the determination set forth in paragraph (d)(2)(i) of this section[,] the employee's failure to provide an adequate amount of breath shall be regarded as a refusal to take a test. The licensed physician shall provide a written statement of the basis for his or her conclusion to the employer."

There is no dispute that, as a bus operator, Allen was classified as a safety-sensitive employee subject to the provisions of appellant's Substance Abuse Testing Policy.

Allen was involved in an accident on May 18, 1998, when he struck a parked automobile with his bus. He was transported to the hospital for drug and alcohol testing. Allen made two attempts but was unable to complete the breathalyzer portion of the test. In accordance with federal regulations and appellant's Substance Abuse Testing Policy, on May 19, 1998, appellant sent Allen for a medical evaluation with a pulmonologist to determine if there was any medical reason why he could not complete the breathalyzer test. On May 21, 1998, the pulmonologist informed appellant that "Mr. Allen is functionally capable of satisfying the physical requirements to perform breath alcohol testing without untoward effects." Because there was no medical reason for appellant's inability to complete the breathalyzer test, appellant deemed Allen's failure to produce sufficient air a refusal to complete the test and terminated his employment.

Pursuant to the collective bargaining agreement grievance procedure, Allen sought reversal of his discharge. His grievance was denied at every level of the process. The matter proceeded to an arbitration hearing before a single arbitrator. The issue presented to the arbitrator for review was: "Does just cause exist for the termination of the grievant based on a failure to provide an adequate amount of breath to complete the breath alcohol testing procedure? If not, what shall the remedy be?"

On October 22, 1999, the arbitrator issued his decision and award. He found that appellant had a "zero-tolerance policy" with respect to drug and alcohol usage and that its policy was justified by "powerful public policy considerations." He found further that because Allen faced the "dire consequence" of termination for failure to give a sufficient amount of air on the test, appellant was required to meet its burden of proving that Allen refused to take the breathalyzer test by clear and convincing evidence. The arbitrator then concluded that appellant had met its burden of proof: "[T]he Authority has established to the satisfaction of the arbitrator that the grievant refused a drug test within the meaning of the FTA regulations and the Substance Abuse Policy of the Authority."

The arbitrator then concluded, however, that appellant had not met its burden of showing that Allen had been properly transported to the hospital for testing:

"In examining the burden of proof that must be carried by the Authority, it appears that the Authority must establish more than wrongdoing and the propriety of the penalty in this case. It is critical to point out that the context in which this case must be decided is the post accident testing context. In this context, both the policy of the Authority and the FTA regulations require the Authority to make an important determination before testing can proceed.

"The FTA regulations require the Authority to make a determination that the employee's performance can [*sic*] be 'completely discounted as a contributing factor to the accident.' This only makes sense because it is the accident that provides probable cause to test the grievant. If it is determined that the grievant's actions were not a contributing factor to the accident, testing is unwarranted because no probable cause then exists. The Substance Abuse Policy of the Employer refers to this requirement, pursuant to the FTA regulations, as a part of the Burden of Proof of the Authority. See Section VIII of the Substance Abuse Policy.

"The record evidence is devoid of any showing as a part of the Authority's burden of proof that it determined that the grievant's performance was or was not a contributing factor to the accident for which he was referred to testing. * * *

"A reading of the Policy of the Authority and the FTA regulations make it clear that such a finding is intended as a trigger to the post-accident testing process. Whether it is ultimately determined that the grievant was or was not responsible for the accident, a determination must be made since the Policy and the FTA regulations make such a finding the fulcrum on which probable cause to test rests. In the absence of such findings no cause for testing was present. In the absence of cause for testing, there can be no just cause for termination of the grievant's employment."

Finding no just cause for termination, the arbitrator ordered Allen reinstated to his position as bus operator.

Upon receipt of the arbitrator's award, appellant sent a letter to the arbitrator requesting that he reconsider his award because his interpretation of appellant's Substance Abuse Testing Policy and the FTA regulations with respect to post-accident testing was incorrect. In his response to appellant's request, the arbitrator acknowledged his error, but concluded that he no longer had jurisdiction to modify the award:

"This arbitrator held that the discharge of the grievant was not for cause and ordered the grievant reinstated to his employment. The basis for the ruling by

this arbitrator was that the language of the regulations of the Federal Transit Administration, specifically 49 C.F.R., Section 653.45, and the internal regulations of the Authority, required that the Authority reach the conclusion that the grievant could not have contributed to the accident that led to drug testing before the Authority could proceed to order the grievant to drug testing. Since the Authority could not show that it had done so, no just cause for termination existed.

"* * *

"This arbitrator reviewed the substance of the ruling in light of the arguments by the parties and also reviewed the authority of the arbitrator in light of the prior ruling. As to the substance of the prior ruling, this arbitrator takes the position that the view of the Authority is the better view when the practical aspects of post-accident testing and the overall objective of the regulations are considered. It would simply be impractical to construe the regulations as depriving the Authority of the power to test in the absence of a formal determination that the driver involved did not contribute to the accident.

"Having made this observation, it is also clear that * * * the doctrine of *functus officio* effectively precludes this arbitrator from reopening the award for reconsideration. Thus, the award stands as previously ordered by the Arbitrator."

On January 24, 2000, appellant filed an application in the Common Pleas Court of Cuyahoga County to vacate the arbitration award pursuant to R.C. 2711.10. The union filed a brief in opposition to appellant's application and an application to confirm the award. The trial court subsequently denied appellant's application and confirmed the arbitration award, finding that "the award was not obtained by fraud, corruption or undue means." The trial court also denied appellant's subsequent motion for reconsideration.

Appellant timely appealed, raising two assignments of error for our review:

"I. The trial court erred in overruling plaintiff's motion to vacate arbitration award on plaintiff's claim that the arbitration award violates public policy and fails to draw its essence from the collective bargaining agreement.

"II. The trial court erred in overruling plaintiff's motion to vacate arbitration award on plaintiff's claim that the arbitration fails to draw its essence from the collective bargaining agreement and must be vacated."

 In accordance with the federal policy of settling labor disputes by arbitration, judicial review of labor arbitration awards is narrow and deference is to be given to an arbitrator's findings. See *United Paperworkers Internatl. Union, AFL–CIO v. Misco, Inc.* (1987), 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d

286; *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; *Goodyear Tire & Rubber Co. v. Local 200* (1975), 42 Ohio St.2d 516, 330 N.E.2d 703. A court may not, however, enforce an arbitration award that is contrary to public policy. See *W.R. Grace & Co. v. Local 759, Internatl. Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.* (1983), 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298. A court may refuse to enforce an arbitrator's interpretation of a provision in a collective bargaining agreement, where the agreement, as interpreted, would violate some explicit, well-defined, and dominant public policy, to be ascertained by the court by reference to the laws and legal precedents, and not from general considerations of supposed public interest. *Id.*; *W.R. Grace & Co. v. Local 759, supra;* see *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627* (Sept. 28, 1994), Hamilton App. No. C–930423, unreported, 1994 WL 525543 (*SORTA I*). Generalizations about safety are not enough to establish public policy. See *United Paperworkers Internatl. Union, AFL–CIO v. Misco, Inc.*; *SORTA I, supra.*

The Ohio legislature, in R.C. 2711.10, codified the reasons that allow a trial court to vacate an arbitration award. Pertinent to this case is R.C. 2711.10(D), which provides that a court may vacate an arbitration award if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." An arbitrator exceeds his or her power when the arbitrator's award fails to draw its essence from the collective bargaining agreement. See *SORTA I, supra;* *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627* (1998), 131 Ohio App.3d 751, 723 N.E.2d 645 (*SORTA II*). An arbitrator's award draws its essence from a collective bargaining agreement "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Edn. Assoc.* (1986), 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, paragraph one of the syllabus. An arbitrator's award departs from the essence of a collective bargaining agreement when (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot rationally be derived from the terms of the agreement. *Ohio Office of Collective Bargaining v. Civ. Serv. Employees Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 572 N.E.2d 71, syllabus.

The duty of common carriers to exercise the highest degree of care, consistent with the practical operation of the line, to ensure the safety of their passengers and the rest of the traveling public is a valid, compelling, and clearly established public policy. *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit*

*Union, Local 627* (Dec. 10, 1999), Hamilton App. No. C–980974, 1999 WL 1127293, citing *Dietrich v. Community Traction Co.* (1964), 1 Ohio St.2d 38, 30 O.O.2d 22, 203 N.E.2d 344; *SORTA I; SORTA II, supra.* Furthermore, both Ohio and federal courts have recognized a well-defined, dominant public policy against drug- and alcohol-induced impairment of transportation workers who operate in safety-sensitive positions. See, *e.g., Gulf Coast Indus. Workers Union v. Exxon Co.* (C.A.5, 1993), 991 F.2d 244, 250–254; *Cleveland Bd. of Edn. v. Internatl. Bhd. of Firemen & Oilers Local 701* (1997), 120 Ohio App.3d 63, 696 N.E.2d 658; *SORTA II, supra.* See, also, Sections 653 and 654, Title 49, C.F.R.

■ In its first assignment of error, appellant contends that the trial court erred in confirming the arbitrator's award because the award violates public policy. In its second assignment of error, appellant contends that the trial court erred in confirming the arbitrator's award because the award does not draw its essence from the collective bargaining agreement.

Section VIII of appellant's Substance Abuse Testing Policy specifically provides that, in the event of a non-fatal mass transit accident, the operator of the bus will be subject to FTA drug and alcohol testing, within two hours of the accident, "when all covered employees operating the mass transit vehicle cannot be completely discounted as a contributing factor." Section VIII of the policy further specifies that GCRTA policy warrants post-accident testing when an operator of a bus is involved in an accident with a fixed object and the employee "cannot immediately be discounted from contributing to the accident."[2]

Appellant asserts that Allen was properly tested because "the GCRTA supervisor at the scene could not find that Mr. Allen had not contributed to the accident." There is nothing in the record, however, to indicate that anyone made a determination, prior to testing Allen, that Allen's performance could not be "completely discounted as a contributing factor to the accident" based on the best information available at the time of the decision. Although there is an affidavit from Linda Tancek, appellant's medical coordinator, in the record, Tancek's affidavit is not based upon any personal knowledge that she acquired in investi-

---

2. We recognize that Section 654.7, Title 49, C.F.R. defines "accident" as an incident in which "one or more vehicles incurs disabling damage as the result of the occurrence * * *." It further defines "disabling damage" as "damage which precludes departure of a motor vehicle from the scene of the accident in its usual manner in daylight after simple repairs." Here, there was no evidence that either the bus Allen was driving or the car that he hit suffered "disabling damage" as defined in Section 654.7, Title 49, C.F.R. Both counsel for appellant and counsel for appellee conceded at oral argument, however, that RTA and the Union have agreed upon and utilize a definition of "accident" that is broader than that set forth by the Federal Transit Administration regulations and that under this broad definition, Allen was involved in an "accident" and, therefore, subject to the provisions of appellant's Substance Abuse Testing Policy.

gating Allen's role in the accident. Rather, it merely states that Allen was "transported for a drug and alcohol test in accordance with the GCRTA Drug and Alcohol Testing Policy." Such an assertion is insufficient to establish that someone from RTA actually made a determination, as required by appellant's policy, that Allen was transported for testing because, based upon the best information available at the time, his conduct could not be immediately or completely discounted as a contributing factor to the accident.

Section 18, Article I of the collective bargaining agreement between appellant and appellee, entitled "Compliance with Other Regulations," provides: "The Authority, its employees and the Union shall comply with all applicable laws, valid rules regulations and orders * * * and therefore, nothing in these Conditions shall be construed to conflict or be inconsistent with such applicable laws, rules, regulations or orders." Because there is no evidence in the record to indicate that appellant made a determination prior to testing that Allen's performance could not, based on the best information available at the time of decision, be completely discounted as a contributing factor to the accident, appellant did not comply with its Substance Abuse Testing Policy in testing Allen. Without any evidence that Allen was properly tested pursuant to appellant's Substance Abuse Testing Policy, however, there can be no just cause pursuant to the collective bargaining agreement for his termination.[3]

Accordingly, there is a rational nexus between the arbitrator's decision finding appellant's termination without just cause and the collective bargaining agreement. Moreover, the award is not arbitrary, capricious, or unlawful. See *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities, supra.*

We recognize that appellant has a zero-tolerance policy for drug and alcohol abuse. Furthermore, we recognize the dominant public policy against the illegal use of drugs and alcohol by transportation employees in safety-sensitive positions. We cannot, however, solely in the interest of this compelling public policy, overlook appellant's failure to comply with the procedures set forth in its

---

**3.** We emphasize, however, that we reject the arbitrator's erroneous conclusion that appellant had the right to test Allen only if appellant demonstrated, prior to testing, that Allen's performance *was a contributing factor* to the accident for which he was referred to testing. Rather than allowing appellant to test Allen merely because his performance could not be completely or immediately discounted as a factor in the accident, the arbitrator would have appellant conduct an in-depth investigation of the accident prior to testing to determine whether his performance was a contributing factor. Neither appellant's Substance Abuse Testing Policy nor the FTA regulations incorporated in appellant's Policy require an in-depth investigation establishing that the operator had a contributory role in the accident prior to post-accident testing. Rather, they merely require a determination that, based on the best information available at the time (which can be scant), an operator's performance cannot be completely discounted as a contributing factor to the accident.

Substance Abuse Testing Policy and, hence, the collective bargaining agreement between appellant and appellee.

Appellant's first and second assignments of error are therefore overruled.

*Judgment affirmed.*

KARPINSKI, P.J., and KILBANE, J., concur.