JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Cuyahoga Metropolitan Housing Authority ("CMHA"), appeals from the trial court's judgment confirming an arbitration award which reinstated Kevin Martin to his position with CMHA. We affirm.
 {¶ 2} CMHA and defendant-appellee, Service Employees International Union Local 47 ("SEIU"), as representative of CMHA service and maintenance employees, including Martin, were parties to a collective bargaining agreement effective July 1, 2002 through June 30, 2005. In relevant part, the agreement provides that CMHA could suspend, discipline, demote or discharge an employee for "just cause." Under the agreement, termination was subject to the grievance procedure, including arbitration. The arbitrator's authority was limited to "interpretation and application" of the agreement, and he had no authority to "(1) add or subtract from, or modify in any way the provisions of this Agreement; (2) pass upon issues governed by law; and (3) make an award in conflict with law."
 {¶ 3} Martin worked as a Service Person V in CMHA's Building Systems Department. His normal workday was Monday through Friday, 8:00 a.m. to 4:30 p.m., but he was often called back to work after his shift had ended or on weekends. His job duties required him to travel to CMHA's various estates to perform plumbing work and he was permitted to use CMHA's vehicles to travel to the different locations. *Page 4 
 {¶ 4} Each CMHA vehicle was assigned its own credit card and each service person was issued a personal identification number ("PIN") to be used with the credit cards. With their PIN, service persons could use any of the credit cards for CMHA vehicles. The credit cards would track the gas usage by the employee and vehicle and identify the date, time, location, and amount of fuel purchased.
 {¶ 5} CMHA's vehicle and gas card policy advised employees that the credit cards were to be used for gasoline purchases for CMHA vehicles only and that their PIN would identify the time, date, location, and cost of the gasoline purchased.
 {¶ 6} CMHA also had a "Take-Home Vehicle Policy" relating to its vehicles. The policy provided that "whenever possible," CMHA vehicles should be picked up and dropped off at designated CMHA parking areas to avoid the necessity of take-home vehicles. Take-home privileges for employees could be approved, however, by the department director, transportation officer, and executive director. Employees with take-home privileges would be assessed $30 per pay period, automatically deducted from their paycheck.
 {¶ 7} CMHA initiated an investigation of the fuel transactions for all service persons in the Building Systems Department after receiving a tip in July 2004 that one of its service persons was using CMHA's credit cards for his own personal use. Although the tip did not relate to Martin, CMHA's investigation of Martin's fuel purchases revealed 34 fuel transactions for January 2004 through July 2004, significantly more purchases than made by other service persons in the same *Page 5 
period. In addition, the investigation revealed five fuel purchases made when he was not working.
 {¶ 8} CMHA subsequently terminated Martin for violating CMHA rules, including one regarding theft, and for converting CMHA property (gasoline) on five occasions. The termination was the subject of a grievance, and ultimately proceeded to arbitration.
 {¶ 9} The arbitrator found that CMHA had failed to meet its burden of demonstrating that Martin's gas purchases were improper. The arbitrator found that Martin was single and worked a lot of overtime and that because he did not own a vehicle, his supervisor had given him permission to commute to and from a CMHA estate within walking distance of his home with a CMHA vehicle. The arbitrator further found that service employees would be disciplined if their CMHA vehicles ran out of gas, but there were no rules regarding when employees could purchase gas. The arbitrator determined that Martin's numerous fuel purchases, compared to those of other service employees, were not unusual, because he worked so much overtime. He also determined that CMHA had not met its burden of proving "just cause" for discharge relating to the five occasions when Martin purchased gasoline before or after work hours, because 1) the fueling was for a CMHA vehicle; 2) Martin had permission to drive a CMHA vehicle to a CMHA estate near his home after work; and 3) Martin needed to keep the fuel level sufficient to keep the vehicle usable *Page 6 
during work hours. The arbitrator concluded that CMHA had failed to demonstrate that Martin had fraudulently obtained any gasoline and ordered his reinstatement.
 {¶ 10} CMHA appealed the arbitration award to the common pleas court, which confirmed the arbitrator's decision. CMHA now appeals and raises five assignments of error for our review.
 {¶ 11} Judicial review of labor arbitration awards is limited and courts must afford substantial deference to the arbitrator's decision.Painesville City Local Schs. Bd. of Edn. v. Ohio Assn. of Pub. Sch.Employees, Lake App. No. 2005-L-100, 2006-Ohio-3645. Generally, arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator. Bowden v.Weickert, Sandusky App. No. S-05-009, 2006-Ohio-471, at ¶ 50, citingFindlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn. (1990),49 Ohio St.3d 129, 132, reversed on other grounds (1991), Cincinnati v.Ohio Council 8, AFSCME, 61 Ohio St.3d 658.
 {¶ 12} The policy underlying the narrow standard of review and presumption of validity was well stated in Motor Wheel Corp. v. GoodyearTire Rubber Co. (1994), 98 Ohio App.3d 45, 52:
 {¶ 13} "The limited scope of judicial review of arbitration decisions comes from the fact that arbitration is a creature of contract. Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the *Page 7 
parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead merely become a system of `junior varsity trial courts' offering the losing party complete and vigorous de novo review."
 {¶ 14} The standard of review on appeal is whether the trial court erred as a matter of law in confirming the arbitration award. Dayton v.Internatl. Assn. of Firefighters, Local No. 136, Montgomery App. No. 21681, 2007-Ohio-1337, at ¶ 11. Our review is limited to a review of the trial court's order; we cannot review the substantive merits of the award absent evidence of material mistakes or extensive impropriety. Id. at ¶ 16; Prim Capital Corp. v. Huelsman, Cuyahoga App. No. 85084,2005-Ohio-2626, at ¶ 8, citing Lynch v. Halcomb (1984),16 Ohio App.3d 223, 224.
 {¶ 15} R.C. 2711.10 sets forth narrow grounds upon which a trial court should vacate an arbitration award: if it was procured by "corruption, fraud, or undue means," there was evidence of "partiality or corruption" on the part of the arbitrator or the arbitrator was "guilty of misconduct," or the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
 {¶ 16} In its first assignment of error, CMHA argues that the arbitrator exceeded his authority because he added terms to the agreement. Specifically, CMHA contends that Martin was terminated forconversion, but the arbitrator found there was not enough evidence to "arrive at the conclusion that [he] stole gasoline." *Page 8 
(Emphasis added.) CMHA contends that the arbitrator imposed an additional requirement that CMHA prove theft, not just conversion, and therefore, he impermissibly added an additional term to the agreement.
 {¶ 17} CMHA's argument fails. First, CMHA itself used the terms theft and conversion interchangeably. For example, in CMHA's letter charging Martin with rule violations, it referenced a violation of Rule B-5 of CMHA Administrative Order 11, which states that employees may be terminated for "Theft, improper removal, misappropriation, willful destruction of CMHA property * * *." (Emphasis added.) In its October 15, 2004 letter to Martin advising him that he was terminated, CMHA again referenced Rule B-5.
 {¶ 18} Second, even if the arbitrator erroneously equated conversion with theft, he specifically found that CMHA had not met its burden of proving that Martin had, in any fashion, wrongfully acquired gasoline. In short, the arbitrator found that Martin had not violated any CMHA policy, and, therefore, there was no just cause for termination. Any distinction between conversion and theft is meaningless under these circumstances.
 {¶ 19} Appellant's first assignment of error is overruled.
 {¶ 20} In its second assignment of error, CMHA contends that the arbitrator improperly based the award on matters outside the agreement. Specifically, CMHA contends that the arbitrator referred to "extraneous matters" in the decision, namely: 1) the mandatory employee meeting during which six CMHA employees were *Page 9 
arrested, handcuffed, and led out of the room; 2) the fact that the prosecutor ultimately dropped the criminal charges against the arrested employees; 3) the testimony regarding two other arbitration awards by different arbitrators which reinstated two of the other employees fired by CMHA for alleged gasoline theft; and 4) the evidence regarding Martin's use of overtime and his supervisor's permission to use a CMHA vehicle to commute to a CMHA estate near his home. CMHA contends that none of these were "relevant facts" as to whether Martin was terminated for just cause and, accordingly, indicate that the award did "not draw its essence" from the agreement. We disagree.
 {¶ 21} Our review of the record demonstrates that all of the evidence to which CMHA objects was presented to the arbitrator at the hearing, either by CMHA or SEIU. None of the examples cited by CMHA indicate that the arbitrator determined matters outside the agreement; they are simply the facts of the case and the arbitrator is charged with the authority and responsibility of determining those facts. Southwest Ohio RegionalTransit Auth. v. Amalgamated Transit Union, Local 627 (2001),91 Ohio St.3d 108, 109. ("[T]o resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts * * *.") The arbitrator did not add terms or conditions to the agreement; he simply determined the facts and construed the agreement in accordance with the facts. Merely because the arbitrator did not see the facts in the same light as CMHA does not mean that the arbitrator somehow exceeded his authority. *Page 10 
 {¶ 22} An arbitrator's award "draws its essence" from the collective bargaining agreement "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious, or unlawful." Findlay, supra at 132. An arbitrator's award departs from the essence of a collective bargaining agreement when: 1) the award conflicts with the express terms of the agreement, and/or 2) the award is without rational support or cannot rationally be derived from the terms of the agreement. Greater Cleveland Regional TransitAuth. v. Amalgamated Transit Union Local 268 (2001), 141 Ohio App.3d 33,41.
 {¶ 23} Here, the arbitrator determined, on the facts presented, that CMHA did not meet its burden of proving that Martin fraudulently obtained gasoline and, therefore, there was no just cause for termination. Therefore, there is a "rational nexus" between the agreement and the arbitrator's award reinstating Martin to his position.
 {¶ 24} Appellant's second assignment of error is overruled.
 {¶ 25} A court may not enforce an arbitration award that is contrary to public policy. Greater Cleveland Regional Transit Auth., supra, citing W.R. Grace Co. v. Local 759, Internatl. Union of the UnitedRubber, Cork, Linoleum Plastic Workers of America (1983),461 U.S. 757, 103 S. Ct. 2177, 76 L.Ed. 2d 298. In its third assignment of error, CMHA contends that the award reinstating Martin to his position violated a public policy against theft in office by a public employee. See R.C.2921.41. *Page 11 
 {¶ 26} CMHA's argument fails, because Martin was neither convicted of, nor pleaded guilty to, any theft offense, and, in fact, all charges against him were dropped. In addition, the arbitrator found that CMHA did not prove that Martin committed any misconduct. Accordingly, the arbitrator's award reinstating Martin did not violate any public policy against theft in office. See, also, Cuyahoga Metro. Housing Auth. v.SEIU Local 47, Cuyahoga App. No. 88670, 2007-Ohio-3422, at 1f23.
 {¶ 27} Appellant's third assignment of error is overruled.
 {¶ 28} In its fourth assignment of error, CMHA contends that the award demonstrates the arbitrator's partiality in favor of Martin and against CMHA. Specifically, CMHA contends that the arbitrator was biased because he did not mention an allegedly "bogus" Union exhibit in his decision and there is no reference in the award to the fact that Martin had been terminated for conversion, as opposed to theft.
 {¶ 29} To show that an arbitrator's decision evidenced partiality or bias, there must be some evidence of actual bias or sufficient evidence of circumstantial facts that would give rise to a question of bias.Beck Suppliers, Inc. v. Dean Witter Reynolds, Inc. (1988),53 Ohio App.3d 98, 102. We find neither.
 {¶ 30} First, as discussed above, the distinction between conversion and theft, as applicable to this case, is meaningless. Second, nothing requires an arbitrator to specifically cite to each and every piece of evidence presented during a case. The *Page 12 
arbitrator's failure to mention the Union exhibit in the decision does not indicate partiality or bias and, in fact, could simply mean that the arbitrator gave the exhibit no weight at all.
 {¶ 31} Appellant's fourth assignment of error is overruled.
 {¶ 32} In its fifth assignment of error, CMHA contends that the award reinstating Martin was rendered in "manifest disregard of the law and evidence." CMHA cites to Merrill Lynch, Pierce, Fenner Smith, Inc. v.Bobker (C.A.2, 1986), 808 F.2d 930, wherein the court stated that the term "disregard," in this context, "implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore it." CMHA argues that the arbitrator ignored the governing law regarding Martin's theft in office by reinstating him to his position.
 {¶ 33} The evidence, however, failed to demonstrate that Martin had misused CMHA's gasoline credit cards or that he had misappropriated gasoline in any fashion. Because there was no evidence that Martin had violated any CMHA policy or misappropriated gasoline to his own use, there was no just cause for his discharge. Accordingly, the arbitrator's decision reinstating Martin was neither against the law nor the evidence.
 {¶ 34} Appellant's fifth assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 13 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANTHONY O. CALABRESE, JR., P.J., and MARY J. BOYLE, J., CONCUR *Page 1