[Cite as *N. Royalton v. Urich*, 2013-Ohio-2206.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99276**

## CITY OF NORTH ROYALTON

PLAINTIFF-APPELLANT and
CROSS-APPELLEE

vs.

## RICHARD URICH, ET AL.

DEFENDANTS-APPELLEES and
CROSS-APPELLANTS

### JUDGMENT:
AFFIRMED AS MODIFIED

Administrative Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-777769

**BEFORE:** Boyle, P.J., Celebrezze, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 30, 2013

**ATTORNEYS FOR APPELLANT**

James A. Budzik
Mansour, Gavin, Gerlack & Manos Co., L.P.A.
55 Public Square
Suite 2150
Cleveland, Ohio   44113

Thomas A. Kelly
Law Director
Donna M. Vozar
Assistant Prosecutor
City of North Royalton
13834 Ridge Road
North Royalton, Ohio   44133

**ATTORNEY FOR APPELLEES**

Michael W. Piotrowski
Fraternal Order of Police
Ohio Labor Council, Inc.
2721 Manchester Road
Akron, Ohio   44319

MARY J. BOYLE, P.J.:

{¶1}   Plaintiff-appellant, city of North Royalton ("City"), appeals the trial court's judgment (1) confirming and enforcing an arbitration award in favor of defendants-appellees, Richard Urich and International Association of Fire Fighters, AFL-CIO Local 2156 ("Union"), and (2) denying its motion to vacate.   Urich and the Union have filed a single cross-assignment of error, seeking clarification of the effective date of the arbitration award.   We affirm the trial court's judgment confirming the arbitration award and sustain the single cross-assignment of error.

Procedural History and Facts

{¶2}   North Royalton and the Union are parties to a collective bargaining agreement ("CBA").   Under the agreement, disputes between the City and the Union concerning the application or interpretation of the CBA must be resolved through the agreement's grievance-arbitration procedure.

{¶3}   The facts underlying this appeal are not disputed and are set forth in the arbitrator's opinion and award as follows.

{¶4} Urich had been a North Royalton firefighter–paramedic for seven years.   On April 17, 2010, Urich and two other firefighter–paramedics were dispatched to assist a resident suffering an apparent seizure.   Upon arriving at the scene, they were informed by the patient's wife that the patient had a history of heroin abuse.   The paramedics forcibly removed the bathroom door and found the patient unconscious on the bathroom

floor. Urich established an IV line and injected Narcan into the patient's system to counteract the effect of a possible heroin overdose. The patient regained consciousness and within minutes was able to walk to the rescue squad to be transported to Parma Community General Hospital for further treatment.

{¶5} Prior to departing the bathroom with the patient, Urich flushed the toilet containing paper and debris. Urich also inserted the syringe used by the patient and a small package wrapped with a rubber band inside the empty Narcan box. While he was leaving the apartment, Urich informed Lieutenant Greg Kazmir, who had recently arrived on the scene, that he flushed the toilet in order to protect the safety of the patient's child. Prior to departing, Urich removed the syringe from the Narcan box and placed it in the sharps container located in the rescue squad vehicle. Urich also placed the rubber-band-wrapped package on the deck of the rescue squad next to the sharps container.

{¶6} Upon arriving at the hospital with the patient, Urich was contacted by a dispatcher with the North Royalton Police Department, who inquired whether there were any drugs on the scene. Urich told the dispatcher that everything had been flushed down the toilet to protect the child. Urich subsequently had a discussion with his co-workers concerning the patient's syringe and rubber-band-wrapped package located in the rescue squad vehicle. Soon thereafter, Urich telephoned North Royalton police and indicated that his co-workers had found the patient's syringe and rubber-band-wrapped package in the rescue vehicle that apparently must have fallen out of the patient's pocket. The

North Royalton police subsequently retrieved the syringe and package and instructed Urich to complete a statement form regarding the incident.

{¶7} On April 18, 2010, Urich telephoned both Lieutenant Tyson Fabish and Fire Chief Michael Fabish and informed them of the incident. Urich's co-workers, who accompanied him on the emergency call and each expressed concerns regarding the events that transpired during the course of the call, submitted written supplemental fire department incident reports on April 18, 2010. Based on conflicting reports between Urich's version of the events and his co-workers', Chief Fabish initiated an internal investigation.

{¶8} On April 20, 2010, the North Royalton Police Department commenced an investigation concerning Urich's conduct in connection with the April 17, 2010 emergency call. Three days later, Urich was arrested and formally charged with the following three felony violations: tampering with evidence, obstructing justice, and drug possession.

{¶9} Urich was subsequently suspended without pay pending final resolution of the criminal charges. On April 28, 2011, Urich pleaded guilty to a single count of attempted obstructing justice, a first degree misdemeanor. On May 31, 2011, the City's safety director issued a decision to terminate Urich's employment, which was upheld by the mayor. Thereafter, the Union provided the City with a notice to submit the matter to arbitration under the CBA.

{¶10} The parties mutually agreed on the arbitrator and submitted the following

stipulated issue for the arbitrator to resolve: "Whether there was just cause to terminate the grievant on May 31, 2011? If not, what should the remedy be?" After hearing three days of evidence and allowing the submission of post-hearing briefs, the arbitrator issued a 40-page opinion on February 16, 2012, awarding the following:

> The grievant's discharge was not for just cause. The City failed to satisfy its burden of proof that the grievant violated each of the Rules and Regulations as cited in the Safety Director's Decision dated May 31, 2011. The grievance is sustained, in part, as follows. The grievant shall be reinstated to his former position with his seniority restored, but without back pay. The fees and expenses of the arbitrator shall be divided equally between the City and the grievant.

{¶11} The City subsequently filed a complaint in common pleas court, seeking to vacate the arbitrator's decision. Urich and the Union answered the complaint and filed a cross-motion to confirm the arbitrator's decision. The trial court set the matter for briefing and ultimately denied the City's motion to vacate and granted the Union and Urich's motion to confirm, ordering Urich reinstated to his former position with the City and his seniority restored but without back pay.

{¶12} The City now appeals, raising three assignments of error:

> I. The common pleas court erred to the prejudice of the City of North Royalton by failing to vacate the award of the arbitrator which reinstated Richard Urich to city employment in accordance with R.C. 2711.10(D).

> II. The common pleas court erred in the prejudice of the City of North Royalton by confirming the arbitration award which reinstated Richard Urich to city employment.

> III. The common pleas court erred to the prejudice of the City of North Royalton by failing to determine the arbitration award reinstating Richard Urich to city employment was in violation of public policy.

**{¶13}** The Union and Urich have filed a cross-appeal, raising the following single cross-assignment of error:

I.  The common pleas court erred to the prejudice of the appellees by confirming the award in such terms as to suggest that the award was not effective as of its date of issuance.

Standard of Review

**{¶14}** "Judicial review of labor arbitration awards is limited and courts must afford substantial deference to the arbitrator's decision." *Cuyahoga Metro. Hous. Auth. v. SEIU Local 47*, 8th Dist. No. 88893, 2007-Ohio-4292, citing *Painesville City Local Schools Bd. of Edn. v. Ohio Assn. of Pub. School Emps.*, 11th Dist. No. 2005-L-100, 2006-Ohio-3645.  Generally, arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator.  *Bowden v. Weickert*, 6th Dist. No. S-05-009, 2006-Ohio-471, ¶ 50, citing *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 132, 551 N.E.2d 186 (1990), *rev'd on other grounds*, *Cincinnati v. Ohio Council 8, AFSCME*, 61 Ohio St.3d 658, 576 N.E.2d 745 (1991).

**{¶15}** The policy underlying the narrow standard of review and presumption of validity originates "from the fact that arbitration is a creature of contract," and "[c]ontracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process."  *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.*, 98 Ohio App.3d 45, 52, 647 N.E.2d 844 (8th Dist.1994).   Indeed, if parties

cannot rely on the arbitrator's decision — i.e., if a court overrules that decision because it perceives factual or legal error in the decision — "the parties have lost the benefit of their bargain." *Id.* Under those circumstances, the intent of arbitration would be defeated, and arbitration would merely become "a system of junior varsity trial courts offering the losing party complete and vigorous de novo review." *Id.*

{¶16} R.C. 2711.10 sets forth narrow grounds upon which a trial court should vacate an arbitration award, all of which relate to the conduct of the arbitrator: (A) fraud, (B) corruption, (C) misconduct, or (D) exceeded powers. Relying on the last ground, as contained in R.C. 2711.10(D), the City raises three arguments in support of its claim that the "arbitrator exceeded his powers or so imperfectly executed them that mutual, finite and definite award" was not made.

{¶17} When determining whether the arbitrator has exceeded his powers under R.C. 2711.10(D), the reviewing court must confirm the arbitration award if it finds that the arbitrator's award draws its essence from the collective bargaining agreement and it is not unlawful, arbitrary, or capricious. *Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81 Ohio St.3d 269, 690 N.E.2d 1262 (1998), syllabus; *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 132-133, 551 N.E.2d 186 (1990). "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ.*

*Serv. Emps. Assn., Local 11, AFSCME AFL-CIO*, 59 Ohio St.3d 177, 180, 572 N.E.2d 71 (1991), syllabus.

**{¶18}** The review of an arbitration award pursuant to R.C. 2711.10(D) is not a de novo review of the merits of the dispute. *Buyer's First Realty, Inc. v. Cleveland Area Bd. of Realtors*, 139 Ohio App.3d 772, 784, 745 N.E.2d 1069 (8th Dist.2000). "Also, we do not review an arbitration award for legal or factual errors." *Cleveland v. Cleveland Police Patrolmen's Assn.*, 8th Dist. No. 98259, 2012-Ohio-5746, ¶ 21. Again, our review under R.C. 2711.10(D) is limited to the question of whether the arbitration award "draws its essence from the * * * agreement and is not unlawful, arbitrary or capricious." *Findlay City School Dist. Bd. of Edn.* at paragraph two of the syllabus.

Incomplete Award

**{¶19}** The City first argues that the arbitration award should have been vacated because the arbitrator "did not make a final and definite award upon all the issues submitted to him." Specifically, the City points to two administrative charges that the arbitrator did not rule upon in his decision and award, namely, Rule 3.3.1, which provides that any activity prohibited by or in violation of the Ohio Revised Code is just cause for discipline, and Rule 3.3.16, which prohibits immoral, unethical, or notoriously disgraceful conduct by a firefighter. We find that the City's argument lacks merit.

**{¶20}** The arbitrator was charged with deciding the following stipulated issue: "whether there was just cause to terminate the grievant on May 31, 2011? If not, what

should the remedy be?" The arbitrator ultimately concluded that although "significant discipline was warranted, the grievant's discharge was without just cause." Here, the arbitrator properly performed his duties by answering the stipulated question that was presented to him. We find no basis to conclude that the arbitrator's failure to specifically discuss Rules 3.3.1 and 3.3.16 warrants vacation of the award. Indeed, to the extent that the arbitrator did not make a specific finding with regard to these two administrative rules, "an arbitrator is not required to enter findings of fact." *Sicor Secs., Inc. v. Albert*, 2d Dist. No. 22799, 2010-Ohio-217, * 6, citing *N. Ohio Sewer Contrs., Inc. v. Bradley Dev. Co., Inc.*, 159 Ohio App.3d 794, 2005-Ohio-1014, 825 N.E.2d 650, ¶ 19 (8th Dist.).

{¶21} We further note that the two administrative rules at issue are broad and encompass the same conduct that gave rise to many of the eight more specific rules cited by the City's safety director in his decision to terminate Urich's employment. In the arbitrator's 40-page opinion, the arbitrator discussed at length the allegations at issue and found that the City had proven some violations but not all of the violations listed to warrant termination of Urich's employment. Indeed, the arbitrator found that serious discipline was warranted but that the City's terminating Urich's employment was excessive under the facts and circumstances of this case. We therefore find no merit to the City's claim that the arbitrator did not make a final and definite award upon all the issues submitted to him pursuant to R.C. 2711.10(D).

### Burden of Proof

**{¶22}** The City next argues that the arbitrator exceeded his powers or so imperfectly executed them when "he imposed additional burdens of proof upon the City as part of just cause not contained in the CBA." The City contends that the arbitrator created a new contractual burden upon it by applying a heightened burden of proof, requiring clear and convincing evidence to support a disciplinary action, instead of the customary preponderance of the evidence in administrative disciplinary proceedings.

**{¶23}** But the CBA is silent as to the burden of proof to be applied. The arbitrator's application of a clear and convincing burden of proof, therefore, does not conflict with an express term of the CBA. The Ohio Supreme Court has recognized that an arbitrator has the inherent power "to determine the sufficiency of the cause and the reasonableness of the penalty imposed" in the absence of contract language in the CBA expressly prohibiting such power. *Miami Twp.*, 81 Ohio St.3d 269, 271-272, 690 N.E.2d 1262. Thus, the arbitrator acted well within his authority by applying a clear and convincing burden of proof in determining whether Urich violated the stated department rules to justify the termination of his employment. *See also Cleveland v. Cleveland Assn. of Rescue Emps.*, 8th Dist. No. 96325, 2011-Ohio-4263; *Piqua v. Fraternal Order of Police*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876 (2d Dist.) (recognizing that arbitrator acted within his authority in applying a clear and convincing standard regarding "just cause" for disciplining a union employee).

**{¶24}** Further, we note that the parties agreed in the CBA that the arbitration "shall be conducted pursuant to the Rules of Voluntary Arbitration of the American

Arbitration Association."  As recognized by the Second District in rejecting the same argument that the City is raising here, the employer "gave the arbitrator the power to set the quantum of proof by agreeing to arbitrate under the auspices of the American Arbitration Association (AAA) using its rules."  *Piqua* at ¶ 35.

{¶25} Accordingly, we find no merit to the City's claim that the award is void by virtue of the arbitrator applying a clear and convincing standard regarding the just cause analysis.

<u>Arbitrator's Findings Regarding the "Possession"</u>

{¶26} In the City's third argument in support of its claim that the trial court erred in denying its motion to vacate and in granting Urich and the Union's motion to confirm, the City attacks the arbitrator's findings related to Urich's alleged mishandling and removal of the heroin.  The City takes issue with the arbitrator relying on the paramedic protocol as a basis to conclude that Urich did not improperly handle or possess the heroin at issue.  (According to the arbitrator, the paramedic protocol expressly required Urich to remove the heroin from the scene and bring it to the hospital.)  The City argues that the arbitrator exceeded his authority by considering the protocol, and further by ignoring the testimony of Dr. Schikowski, the physician who created the protocol and stated that "it is not the intent of the protocol to take illegal drugs * * * the intent is to bring in prescription drugs."

{¶27} Although couched as a challenge of the arbitrator exceeding his authority, the City is actually attacking the arbitrator's execution of his authority.  The City's

argument is rooted in its belief that the arbitrator reached the wrong decision. This, however, is not a viable means of seeking to vacate an arbitration decision. "When the city and union agreed to binding arbitration of disputes, they agreed to accept the result, even if it is legally or factually wrong." *Cleveland v. Internatl. Bhd. of Elec. Workers Local 38*, 8th Dist. No. 92982, 2009-Ohio-6223, ¶ 34. Indeed, "[i]f the parties could challenge an arbitration decision on the ground that the arbitrators erroneously decided the legal or factual issues, no arbitration would be binding." *Huffman v. Valletto*, 15 Ohio App.3d 61, 63, 472 N.E.2d 740 (8th Dist.1980).

**{¶28}** Here, we find that all three of the City's arguments in support of their first and second assignments of error lack merit. First, there is no dispute that the parties agreed under the CBA to submit disciplinary disputes to an arbitrator. Second, the arbitration award drew its essence from the terms of the CBA because it was based on Urich's contractual right that any disciplinary action taken by the City shall only be for just cause. Thus, since the arbitrator's award draws its essence from the CBA and is not unlawful, arbitrary, or capricious, the arbitrator's factual findings and legal conclusions are therefore immaterial and not a basis for overturning the court's refusal to vacate the arbitration award. *Findlay Edn. Assn.*, 49 Ohio St.3d 129, 132-133, 551 N.E.2d 186.

**{¶29}** The first and second assignments of error are overruled.

<u>Public Policy</u>

**{¶30}** In its final assignment of error, the City argues that the arbitration award violates public policy and therefore must be vacated. Specifically, the City contends that

the reinstatement of Urich to his employment contravenes R.C. 737.11 and violates Ohio's public policy against reinstatement of an officer who falsifies a police report.

{¶31} Relying on federal authority, the Ohio Supreme Court has recognized that, if an arbitrator's interpretation of a CBA violates public policy, the resulting award is unenforceable. *S.W. Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 742 N.E.2d 630 (2001), citing *W.R. Grace & Co. v. Local Union 759, Internatl. Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). But vacating an arbitration award pursuant to public policy is "a narrow exception to the 'hands off' policy that courts employ in reviewing arbitration awards and 'does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy.'" *Id.*, quoting *United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Therefore, the public policy "must be well[-]defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.*, quoting *W.R. Grace & Co.* at 766.

{¶32} While we recognize that at least one Ohio court has found a dominant, well-defined public policy against the reinstatement of a police officer who falsifies a police report, no Ohio court has reached the same conclusion with respect to a firefighter–paramedic. *See Ironton v. Rist*, 4th Dist. No. 10CA10, 2010-Ohio-5292, citing *Brink v. Wadsworth*, 9th Dist. No. 1728, 1988 Ohio App. LEXIS 4972 (Dec. 14,

1998); *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police,* 1st Dist. No. C040454, 2005-Ohio-1560, ¶ 21-21; *see also Jones v. Franklin Cty. Sheriff*, 52 Ohio St.3d 40, 43, 555 N.E.2d 940 (1990) (recognizing that "it is settled public policy * * * that police officers are held to a higher standard of conduct than the general public"). The City urges us to reach the same conclusion with respect to firefighters–paramedics because R.C. 737.11, titled "General Duties of Police and Fire Departments," groups the two departments together under the "Public Safety" chapter. The statute states in relevant part:

> The police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, all criminal laws of the state and the United States, all court orders issued and consent agreements approved pursuant to sections 2919.26 and 3113.31 of the Revised Code, all protection orders issued pursuant to section 2903.213 or 2903.214 of the Revised Code, and protection orders issued by courts of another state, as defined in section 2919.27 of the Revised Code. The fire department shall protect the lives and property of the people in case of fire. Both the police and fire departments shall perform any other duties that are provided by ordinance. The police and fire departments in every city shall be maintained under the civil service system.

R.C. 737.11.

**{¶33}** In recognizing that a clear public policy existed in prohibiting the reinstatement of police officers who falsified reports, the Fourth District specifically emphasized that the statute recognizes that "the police force of a municipal corporation is obligated to 'preserve the peace, protect persons and property, and obey and enforce * * * all criminal laws of the states and the United States." *Rist* at ¶ 20, citing R.C. 737.11. The court further recognized that "honesty is vital to the effective performance of these

duties and to ensuring public trust and confidence in the police force." *Id.*, citing *Brink*, *supra*, and *Cincinnati, supra*. These same considerations, however, do not apply to a firefighter–paramedic nor are they delineated under the statute with respect to firefighters.

**{¶34}** Thus, while we certainly do not condone dishonesty and recognize that it is disfavored in the workplace, we cannot say that a dominant, well-defined public policy exists that all acts of dishonesty warrant immediate termination of a firefighter–paramedic's employment. We likewise cannot say that a clear public policy precludes the reinstatement of a firefighter– paramedic who has provided inaccurate written reports or a false witness statement to the police. Accordingly, we find no merit to the City's claim that the trial court erred in failing to vacate the arbitrator's award as being against public policy.

**{¶35}** The third assignment of error is overruled.

Cross-Assignment of Error

**{¶36}** In their cross-assignment of error, Urich and the Union contend that the trial court's judgment is flawed in that it fails to set forth the effective date of the arbitration award. They argue that the relevant date as to when Urich should have been reinstated (and thereby now entitled to back pay) is the date of the arbitrator's decision of February 16, 2012, not the November 30, 2012 order of the trial court confirming the award. We agree. *See Lundgren v. Freeman*, 307 F.2d 104, 112 (9th Cir.1962) (recognizing that if the arbitration award is upheld in a reviewing court, the rights of the parties are

determined from the date of the award and not the date of the court's judgment confirming the award); *see generally Hellmuth, Obata & Kassabaum v. Ratner*, 21 Ohio App.3d 104, 107, 487 N.E.2d 329 (8th Dist.1984) (applying *Lundgren* and awarding interest from the date of the arbitrator's decision).

{¶37} Urich and the Union's single cross-assignment of error is sustained.

{¶38} In summary, we affirm the trial court's decision confirming the arbitrator's award and denying the City's motion to vacate it. We further sustain Urich and the Union's cross-assignment of error, modifying the trial court's judgment to reflect that the confirmation of the arbitration award now entitles Urich to back pay from the date of the arbitrator's decision, February 16, 2012, until he is reinstated. *See* App.R. 12(A)(1).

{¶39} Judgment affirmed as modified.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
SEAN C. GALLAGHER, J., CONCUR