[Cite as *Ohio Patrolmen's Benevolent Assn. v. Findlay*, 2015-Ohio-3234.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 102282

---

# OHIO PATROLMEN'S BENEVOLENT ASSOCIATION, ET AL.

**PLAINTIFFS-APPELLANTS**

vs.

# CITY OF FINDLAY

**DEFENDANT-APPELLEE**

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-13-815571 and CV-13-817979

**BEFORE:** E.A. Gallagher, J., Jones, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED**: August 13, 2015

**ATTORNEYS FOR APPELLANTS**

Kevin Powers
10147 Royalton Rd., Suite J
P.O. Box 338003
North Royalton, Ohio 44133

Michelle T. Sullivan
Jonathon J. Winters
Allotta Farley Co., L.P.A.
2222 Centennial Rd.
Toledo, Ohio 43617


**ATTORNEYS FOR APPELLEE**

Donald James Rasmussen
City of Findlay Law Director
318 Dorney Plaza, Room 310
Findlay, Ohio 45840

Gary C. Johnson
William F. Schmitz
Eric M. Allain
Gary C. Johnson & Associates
635 West Lakeside Ave., Suite 600
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

**{¶1}** Plaintiffs-appellants, the Ohio Patrolmen's Benevolent Association (the "union") and David Hill (collectively, "appellants"), appeal from a decision of the Cuyahoga County Court of Common Pleas vacating an arbitration award that modified disciplinary action taken by defendant-appellee the city of Findlay (the "city") against Hill, a sergeant in its police department. Appellants contend that the arbitrator acted within his authority under the collective bargaining agreement in modifying the discipline imposed by the city from termination to a five-month suspension and reinstatement without back pay after finding that the city had just cause to discipline him for violations of various police department rules and that the trial court, therefore, erred in vacating the arbitration award under R.C. 2711.10(D). For the reasons that follow, we affirm the trial court's judgment.

**Procedural History and Factual Background**

**{¶2}** On November 21, 2012, Morgan Greeno, a police officer with the Findlay Police Department, filed a complaint with the department regarding an incident that had occurred following a midnight shift roll call involving her direct supervisor, Sergeant Hill on November 13, 2012. After roll call that evening, Sergeant Hill and others were discussing the upcoming Fraternal Order of Police Christmas party, and one of the officers asked Sergeant Hill who was on the committee to coordinate the party. Sergeant Hill began listing the names of the officers who had volunteered to work on the committee. When he came to Officer Greeno, he did not refer to her by name, but instead referred to her as "Whoregan," "essentially conjugating the word[s] whore and

Morgan." Officer Greeno indicated that the comment upset her, in particular because it was made by a supervisor and the entire shift was in the room when the comment was made and because she thought the comment may have stemmed from Officer Greeno's anticipated testimony against Sergeant Hill in a disciplinary arbitration scheduled for later that month. Officer Greeno also complained that Sergeant Hill had condoned or participated in "jokes" other officers on her shift had made regarding her having a sexual relationship with the building's custodian and having become pregnant as a result.

{¶3} Lieutenant Robert Ring investigated Officer Greeno's claims. He interviewed Officer Greeno, Sergeant Hill and the other officers who were present at roll call that evening and questioned them regarding Sergeant Hill's alleged reference to Officer Greeno as "Whoregan."

{¶4} Sergeant Hill admitted that he had referred to Greeno as "Whoregan" during roll call but claimed that it was simply a mistake, i.e., a "slip of the tongue." He denied having ever used the term before and denied that he ever treated Officer Greeno unfairly. Sergeant Hill also denied having ever made any comments to Officer Greeno about her having a sexual relationship with the custodian. He claimed those comments came from other officers on the shift and were typical of the banter engaged in by officers following roll call. Although he claimed his reference to Officer Greeno as "Whoregan" was accidental and that he intended nothing derogatory by it, Sergeant Hill did not apologize to Officer Greeno and did not attempt to retract his comment or otherwise explain to her why he had referred to her in that way.

{¶5} The other officers who were present during roll call that evening told Lieutenant Ring that they had heard Sergeant Hill refer to Officer Greeno as "Whoregan" but did not believe that it was "a deliberate comment." The officers told Lieutenant Ring that they did not think the comment was "that big of a deal" and stated that they perceived Sergeant Hill's remark as "more of a 'tongue tie'" or "an attempt at humor that was taken the wrong way." The officers stated that they had not previously heard Sergeant Hill use that term or call Officer Greeno any other derogatory names.

{¶6} In his report of his investigation, Lieutenant Ring stated that it was unacceptable for a male supervisor to refer to a female subordinate as a "whore" regardless of the context or setting and that he believed it was unlikely that Sergeant Hill had used the term "accidentally" because "[t]he term whore does not just come out of one's mouth as a 'slip of the tongue.'" He concluded that even if the alleged comments regarding Officer's Greeno's "pregnancy" were not considered, Sergeant Hill's derogatory reference to Officer Greeno as "Whoregan" violated several department rules, including rules relating to respect of subordinates, the standard of conduct toward fellow employees and sexual harassment.

{¶7} As part of his investigation, Lieutenant Ring also reviewed Sergeant Hill's personnel file and disciplinary record. This was not the first time Sergeant Hill had violated police department rules and regulations. In July 2012, Sergeant Hill was charged with violating the department's social media policy and issued a written reprimand after he tased a 14-year-old boy while the boy's father (another Findlay police officer) recorded the tasing and the video was later posted on Facebook. Sergeant Hill,

who, at the time, was the department's taser instructor, had defended his actions by claiming that the child had asked to be tased and that his father had given Sergeant Hill permission to tase him. Several weeks later, Sergeant Hill was suspended for ten days for violating department rules after he expressed his displeasure at another officer's (Sergeant Harmon's) promotion to sergeant by disparaging the officer's mental health in front of his subordinates and placing the barrel of his .45 caliber service weapon into his mouth, feigning a suicide attempt, after the announcement was made.

{¶8} Based on his derogatory reference to Officer Greeno as "Whoregan" and his prior disciplinary issues, Lieutenant Ring recommended that Sergeant Hill be suspended for 30 days and demoted from his position as sergeant to a position of police officer.

{¶9} Lieutenant Ring's investigative report was forwarded to Captain Sean Young. Captain Young agreed with Lieutenant Ring's finding that Sergeant Hill's derogatory reference to Officer Greeno as "Whoregan" was more than a "slip of the tongue" and that he had allowed or participated in "jokes" by other officers regarding a fictitious relationship between Officer Greeno and the building's custodian. He determined that such actions by a supervisor constituted "gross misconduct" in violation of several department rules and regulations. Based on his prior disciplinary issues and Officer Greeno's allegations, Captain Young stated that he did not believe Sergeant Hill's unacceptable behavior was correctable and recommended that Sergeant Hill be terminated.

{¶10} Police Chief Gregory Horne reviewed the reports and recommendations from Lieutenant Ring and Captain Young and agreed that Sergeant Hill's conduct as set

forth in the reports violated department rules and that Sergeant Hill should be terminated. Chief Horne sent Sergeant Hill a notice of disciplinary action, advising him of the rule violations he had committed and his proposed disciplinary action of termination based on Chief Horne's application of the department's "discipline matrix" to Sergeant Hill's offenses and disciplinary history.

{¶11} The city and the union are parties to a collective bargaining agreement (the "CBA"). The CBA incorporates the city's and police department's rules and regulations and requires that disputes between the city and the union concerning the application or interpretation of the CBA, including disciplinary issues, must be resolved through the CBA's grievance-arbitration procedure. Article 10.01 of the CBA[1] states:

> The Union agrees that its membership shall comply with Police Department and City of Findlay Rules and Regulations, including those relating to working conditions, conduct, and performance. The Employer agrees that Police Department and City of Findlay Rules and Regulations, which affect working conditions, conduct, and performance shall be subject to the grievance procedure if they violate this Agreement.

{¶12} Article 4.01 of the CBA effective January 1, 2011 provides, in relevant part:

---

[1]The parties apparently disagree as to which version of the CBA controls the arbitrator's decision. Appellants attached a copy of the CBA effective January 1, 2011 to December 31, 2012 to their motion to confirm the arbitration award. The city attached a copy of the CBA effective January 1, 2013 to December 31, 2015 to its motion to vacate the arbitration award. It is unclear from the record which version of the CBA the arbitrator relied upon in rendering his decision in the case. We need not resolve the issue here because as it relates to the issues in this case, the relevant provisions are substantively similar, if not identical. For example, Article 10.1 is the same in both versions of the CBA.

Unless expressly provided to the contrary by a specific provision of this Agreement, the Employer reserves and retains, solely and exclusively, all of its statutory and common law rights to manage the operation of its Department of Police. Such rights shall include, but are not limited to, the following: (a) to develop, revise, or eliminate work practices, procedures and rules in the operation of the Department of Police and to maintain discipline; * * * (c) to transfer, promote or demote employees, or to layoff, terminate or otherwise to relieve employees from duty for just cause * * * .[2]

Article 39.04 states that "[d]iscipline shall be imposed only for just cause."[3]

{¶13} The discipline matrix is part of the police department's "Disciplinary/Recognition Procedures" ("disciplinary procedures"), re-issued March 1, 2012, which sets forth the department's "disciplinary system." The stated purpose of the disciplinary procedures is "[t]o provide for compliance with Department policies and procedures by members of the Department, as well as provide for and to ensure consistency in disciplinary actions." With respect to "punitive disciplinary action,"

---

[2] Article 4.01 of the CBA effective January 1, 2013 similarly provides, in relevant part: Unless expressly provided to the contrary by a specific provision of this Agreement, the Employer reserves and retains, solely and exclusively, all of its statutory and common law rights to manage the operation of its Department of Police. Employer['s] rights shall include, but are not limited to, the following: the right to * * * (5) suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees; (10) develop, revise, or eliminate work practices, procedures and rules in the operation of the Department of Police and to maintain discipline * * *.

[3] In the CBA effective January 1, 2013, this provision appears in Article 39.07.

section V(A)(3)(b) of the disciplinary procedures states that "[t]he level of disciplinary action will be geared to the employee's disciplinary history and the severity of the offense."

{¶14} The "disciplinary system" applicable to employees covered by the CBA is set forth in section V(B) of the disciplinary procedures. That section provides in relevant part:

> 1. Disciplinary Violations * * *
>    a. Any employee may be disciplined for the following infractions:
>       i. Any infraction of the Rules and Regulations,
>       ii. Or any other failure of good behavior or any other acts of misfeasance, malfeasance, or nonfeasance which adversely affects the ability of the Department to provide services to the public.
>    b. No employee shall be disciplined except for just cause.
> * * *
> 2. Forms of discipline
>    a. In initiating discipline, the employer agrees to the following forms of discipline, in accordance with the guidelines listed in the Disciplinary Matrix (Appendix "A"):
>       i. Notice of Verbal Reprimand
>       ii. Written Reprimand
>       iii. Suspension without pay * * *
>       iv. Reduction in classification
>       v. Termination
> * * *
>    c. Except in situations of gross misconduct, the employer agrees to use progressive discipline.

{¶15} The discipline matrix sets forth a three-step process of progressive discipline, with each step involving a successive violation within the corresponding classification of offense. Under the discipline matrix, rule violations are divided into one of four classes — A, B, C or D — based on the seriousness of the offense. A level of disciplinary action is then assigned to the offense, based on the class of the offense and

whether the employee has had prior rule violations. As explained in the disciplinary procedures:

## MATRIX LAYOUT

| Class | Step 1 | Step 2 | Step 3 |
|---|---|---|---|
| **A** | Level 1 | Level 1 or 2 | Level 2 |
| **B** | Level 2 | Level 3 | Level 4 |
| **C** | Level 4 | Level 4 or 5 | Level 5 |
| **D** | Level 5 | | |

- Violations are divided into classes, based on the seriousness of the offense.
- If the involved employee has no previous violations, discipline will be administered under "Step 1." Successive violations will place the involved employee into the next progressive step. In the event that the involved employee progresses beyond step 3, discipline will progress to "Step 1" of the next progressive class. (i.e. a fourth violation, on a "Class A" offense will place the affected employee on "Step 1" on "Class B")

* * *

- The involved employee will then receive a disciplinary action within the range of the following scale, based upon the indicated discipline level. If more than one discipline level is indicated, the Chief of Police has sole discretion in determining which of the two levels is appropriate, based on the facts of the case and history of the involved employee.

| Level | Action |
|---|---|
| 1 | Informal Counseling or Verbal Reprimand |
| 2 | Written Reprimand |
| 3 | 1-2 day suspension and/or loss of leave |

| 4 | 3-10 day suspension and/or loss of leave |
|---|---|
| 5 | Termination |

**{¶16}** Following his receipt of the notice of disciplinary action, Sergeant Hill filed a grievance, appealing the proposed disciplinary action, claiming that his proposed termination lacked just cause in violation of the CBA. The matter proceeded to a hearing before the city's service-safety director, Paul Schmelzer. Schmelzer directed that the officers present during the roll call be re-interviewed to determine the perceived nature of the "Whoregan" remark and to gain further insight regarding Officer Greeno's allegations that joking of a sexual nature had occurred. Based on the results of the investigation and his consideration of the "applicability and importance of the discipline matrix," Schmelzer agreed with the police chief's decision and ordered that Sergeant Hill be terminated.

**{¶17}** Sergeant Hill and the union challenged his termination, and the issue was submitted to binding arbitration in accordance with the CBA. As agreed by the parties, the issue to be resolved by the arbitrator was "did the [city] have just cause for terminating the sergeant, and if not, what's the remedy."

**{¶18}** On August 29, 2013, after two days of hearings on the matter, the arbitrator issued his decision, denying the grievance in part and upholding it in part. The arbitrator determined that the city had just cause to impose "severe discipline" against Sergeant Hill for his "disrespectful conduct in referring to Officer Greeno as 'Whoregan' in front of other officers" and "failing to carry out his supervisory duties to stop other officers from making inappropriate remarks about her" but that because "not all of the charges brought

against Sgt. Hill were clearly established," i.e., the evidence "failed to clearly demonstrate that Sgt. Hill sexually harassed Officer Greeno in violation of department policy," termination was not an appropriate sanction and "the discharge penalty imposed must be set aside."[4] With respect to what "severe disciplinary penalty" should be imposed for the violations Sergeant Hill had been found to have committed, the arbitrator concluded that the "Discipline Matrix should be applied in this case."

{¶19} Applying the discipline matrix, the arbitrator determined that Sergeant Hill had engaged in "conduct unbecoming an officer," a Class C offense. He further held that because this was Sergeant Hill's second Class C offense within a short period of time — having committed a similar offense in the incident relating to Sergeant Harmon — it was a Step 2, Class C offense, such that a "'level four or five' form of discipline would be in order." The arbitrator held that this meant "the discipline could range from a 3-10 day suspension up to termination" under the discipline matrix. Based on Sergeant Hill's conduct in this case and prior disciplinary record, the arbitrator determined that it would be "appropriate" to reduce the disciplinary penalty from termination to a "lengthy disciplinary suspension." The arbitrator ordered that Sergeant Hill be immediately reinstated to his former sergeant position with full seniority but declined to award any lost wages. With the denial of back pay and reinstatement, the arbitrator, in effect, required Sergeant Hill to serve a five-month suspension for his misconduct.

---

[4]The arbitrator rejected the city's claim that Sergeant Hill had violated the department's sexual harassment policy or created a hostile work environment based on his findings that Sergeant Hill had only once referred to Greeno as "Whoregan" and did not personally participate in teasing Greeno regarding her "pregnancy." The arbitrator held that sexual harassment as defined under the department's policy requires "repeated" conduct.

{¶20} Despite the arbitration award, the city failed to reinstate Sergeant Hill to his former position. Accordingly, on October 15, 2013, appellants filed an application to confirm and enforce the arbitration award in the Cuyahoga County Court of Common Pleas. On November 27, 2013, the city filed an application to vacate and/or modify or correct arbitration award in a separate action in common pleas court, alleging that the arbitrator had exceeded and imperfectly executed his authority and that the arbitration award failed to draw its essence from the CBA. The trial court consolidated the two cases.

{¶21} On November 12, 2014, the trial court granted the city's motion to vacate and denied the union's motion to confirm the arbitration award, concluding that the arbitrator had exceeded and imperfectly executed his authority under the CBA "by failing to properly apply the [discipline matrix]" after he specifically determined that the discipline matrix should be applied to determine the appropriate disciplinary action for Sergeant Hill's rule violations. As the trial court explained:

Arbitrator Mancini, upon review of the record, determined that the Discipline Matrix should be applied in this case. In applying the Matrix, he determined that Hill had committed a Step 2, Class C Offense. Under the Matrix Layout, the appropriate discipline level is Level 4 or Level 5. A level 4 disciplinary action is a 3-10 day suspension and a Level 5 disciplinary action is termination. The Matrix Layout additionally states that "[i]f more than one discipline level is indicated, the Chief of Police has sole discretion in determining which of the two levels is appropriate, based

on the facts of the case and history of the involved employee." Arbitrator Mancini, however, stated that discipline could range from a 3-10 day suspension *up to* termination and returned Hill to duty without back pay. This decision was not authorized by the Matrix. Under the unambiguous terms of the Matrix, after determining that Hill committed a Step 2, Class C offense, two discipline levels could apply: Level 4 *or* Level 5 with the Chief of Police having sole discretion between the two. Because Chief Horne chose termination, Hill could only be terminated.

{¶22} Sergeant Hill and the union appealed the trial court's decision granting the city's motion to vacate the arbitration award, raising the following three assignment of error for review:

> **ASSIGNMENT OF ERROR NO. 1:** The trial court erred in ruling that the arbitrator acted arbitrarily and capriciously and exceeded his authority in rendering his award.

> **ASSIGNMENT OF ERROR NO. 2:** The trial court erred in vacating the arbitration award on the basis of a perceived legal error in the arbitrator's application of the collective bargaining agreement and disciplinary policy.

> **ASSIGNMENT OF ERROR NO. 3:** The trial court erred in vacating the arbitration award by substituting its interpretation of the parties' collective bargaining agreement for the arbitrator's interpretation.

{¶23} Appellants' assignments of error are interrelated and will, therefore, be considered together. In each of their assignments of error, appellants argue that the trial court "overstepped the bounds of its permitted standard of review," applying its own interpretation of the CBA, rather than deferring to the arbitrator's interpretation of the CBA, in vacating the arbitration award. Appellants contend that because the trial court

exceeded its scope of review, its decision must be reversed and the arbitration award enforced. We disagree. We find that the trial court properly determined that the arbitrator's award did not draw its essence from the CBA. Therefore, the trial court did not err in vacating the arbitration award.

{¶24} Voluntary termination of legal disputes by binding arbitration is highly favored under the law. *Cleveland v. Interntl. Bhd. of Elec. Workers Local 38*, 8th Dist. Cuyahoga No. 92982, 2009-Ohio-6223, ¶ 16, citing *Kelm v. Kelm*, 68 Ohio St.3d 26, 27, 623 N.E.2d 39 (1993). Arbitration provides the parties with "a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets." *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 84, 488 N.E.2d 872 (1986). "The whole purpose of arbitration would be undermined if courts had broad authority to vacate an arbitrator's award." *Id.* at 83-84.

{¶25} As a result, the authority of courts to vacate an arbitration award is "extremely limited." *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 5. Courts must accord "'substantial deference'" to an arbitrator's decision. *N. Royalton v. Urich*, 8th Dist. Cuyahoga No. 99276, 2013-Ohio-2206, ¶ 14, quoting *Cuyahoga Metro. Hous. Auth. v. SEIU Local 47*, 8th Dist. Cuyahoga No. 88893, 2007-Ohio-4292. Arbitration awards are generally presumed to be valid, and a common pleas court reviewing an arbitrator's decision may not substitute its judgment for that of the arbitrator. *N. Royalton* at ¶ 14, citing *Bowden v. Weickert*, 6th Dist. Sandusky No. S-05-009, 2006-Ohio-471, ¶ 50. An appellate court's review of an arbitration award is

similarly limited, confined to an evaluation of the trial court's order confirming, modifying or vacating the arbitration award. *Miller v. Mgt. Recruiters Internatl., Inc.*, 180 Ohio App.3d 645, 2009-Ohio-236, 906 N.E.2d 1162, ¶ 9 (8th Dist.), citing *Lynch v. Halcomb*, 16 Ohio App.3d 223, 475 N.E.2d 181 (12th Dist.), paragraph two of the syllabus; *Orwell Natural Gas Co. v. PCC Airfoils, L.L.C.*, 189 Ohio App.3d 90, 94-95, 2010-Ohio-3093, 937 N.E.2d 609, ¶ 8 (8th Dist.). Appellate review does not extend to the merits of an arbitration award absent evidence of material mistake or extensive impropriety — which has not been alleged here. *Id.*

{¶26} As this court explained in *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.*, 98 Ohio App.3d 45, 647 N.E.2d 844 (8th Dist.1994):

> The limited scope of judicial review of arbitration decisions comes from the fact that arbitration is a creature of contract. Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely a system of "junior varsity trial courts" offering the losing party complete and rigorous de novo review. *See Natl. Wrecking  Co. v. Internatl. Bhd. of Teamsters, Local 731,* 990 F.2d 957 (7th Cir.1993).

*Id.* at 52. Parties who agree to resolve their disputes through binding arbitration have bargained for and agreed to accept the arbitrator's findings of fact and interpretation of the agreement, even if the arbitrator's decision is based on factual errors or an incorrect legal analysis:

> "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.

To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract."

*Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 110, 742 N.E.2d 630 (2001), quoting *United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *see also Cedar Fair*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, at ¶ 6 ("So long as arbitrators act within the scope of the contract, they have great latitude in issuing a decision. An arbitrator's improper determination of the facts or misinterpretation of the contract does not provide a basis for reversal of an award by a reviewing court, because '[i]t is not enough * * * to show that the [arbitrator] committed an error—or even a serious error.'"), quoting *Stolt-Nielsen, S.A. v. AnimalFeeds Internatl. Corp.*, 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). A reviewing court cannot reject an arbitrator's findings of fact or interpretation of the agreement simply because it disagrees with them. *Southwest Ohio Regional Transit Auth.* at 110. So long as an arbitrator is arguably construing the agreement, the court is obliged to affirm his decision. *Cleveland v. Fraternal Order of Police, Lodge No. 8*, 76 Ohio App.3d 755, 758, 603 N.E.2d 351 (8th Dist.1991).

{¶27} Notwithstanding these principles, an arbitrator can exceed his or her powers by going beyond the authority provided in the bargained-for agreement or by going beyond their contractual authority to craft an appropriate remedy. *Cedar Fair*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, at ¶ 7. Under R.C. 2711.10(D), "the court of common pleas shall make an order vacating the award upon the application of any party

to the arbitration if * * * [t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶28} In considering whether the arbitrator has exceeded his or her powers where a challenge is made to an arbitration award under R.C. 2711.10(D), the trial court must determine whether the award "draws its essence from the agreement" and is not unlawful, arbitrary or capricious. *Mahoning Cty. Bd. of Mental Retardation*, 22 Ohio St.3d 80, 84, 488 N.E.2d 872 (1986), paragraph one of the syllabus; *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 132-133, 551 N.E.2d 186 (1990) ("[A] court's inquiry [pursuant to Section] 2711.10(D) is limited: 'Once it is determined that the arbitrator's award draws its essence from the * * * agreement and is not unlawful, arbitrary, or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end.'"). An arbitrator's authority is confined to interpreting and applying a collective bargaining agreement. The arbitrator "'does not sit to dispense his own brand of industrial justice.'" *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 180, 572 N.E.2d 71 (1991), quoting *United Steelworkers of Am. v. Ent. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ("[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement * * *. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.").

{¶29}   An arbitration award "draws its essence" from an agreement where there is a "rational nexus" between the agreement and the award.  *Cleveland v. Cleveland Assn. of Rescue Emps.*, 8th Dist. Cuyahoga No. 96325, 2011-Ohio-4263, ¶ 9, citing *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, 793 N.E.2d 484, ¶ 13.   An arbitration award "'departs from the essence'" of an agreement when: "'(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement.'"  *Cedar Fair* at ¶ 7, quoting *Ohio Office of Collective Bargaining*, 59 Ohio St.3d 177, 572 N.E.2d 71, at syllabus.   The arbitrator must apply the contract agreed to by the parties, not "create[], in effect, a contract of his own."  *Ohio Office of Collective Bargaining* at 183.

{¶30} In reviewing an arbitrator's award, the court must, therefore, "distinguish between an arbitrator's act in excess of his powers and an error merely in the way the arbitrator executed his powers.  The former is grounds to vacate, the latter is not." *Piqua v. Fraternal Order of Police*, *Ohio Labor Council, Inc.* 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 18 (2d Dist.).

{¶31} Whether the city had "just cause" to terminate Sergeant Hill was a factual determination to be made by the arbitrator in accordance with the terms of the CBA.   As the Ohio Supreme Court has recognized, a "just cause" determination typically involves two components: "'(1) whether a cause for discipline exists and (2) whether the amount

of discipline was proper under the circumstances.'" *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81 Ohio St.3d 269, 272, 690 N.E.2d 1262 (1998), quoting *Schoonhoven, Fairweather's Practice and Procedure in Labor Arbitration* (3d Ed. 1991); *see also Summit Cty. Children Servs. Bd. v. Communication Workers, Local 4546*, 113 Ohio St.3d 291, 2007-Ohio-1949, 865 N.E.2d 31, ¶ 21 ("[A]n arbitrator's inquiry into whether there is "good cause" is one that almost always involves two factors — whether the misconduct alleged has been proven and whether the discipline imposed for the misconduct was reasonable.").

{¶32} In this case, the parties do not dispute the arbitrator's finding that the city had just cause to discipline Sergeant Hill under the CBA. Rather, the parties dispute whether the arbitrator's determination that termination was too severe a sanction under the circumstances and his subsequent arbitration award — overturning his termination and imposing a five-month suspension and reinstatement without back pay — drew its essence from the CBA.

{¶33} Citing *Bd. of Trustees of Miami Twp.,* 81 Ohio St.3d 269, 272, 690 N.E.2d 1262, appellants contend that an arbitrator has "broad authority to fashion a remedy" even if it is not expressly recognized by the CBA and that so long as the arbitrator's remedy "represents a fair solution to the dispute," the remedy should be affirmed. Appellants argue that the arbitration award drew its essence from the CBA because the just cause standard for discipline contained in the CBA gave the arbitrator the authority to review the appropriateness of the discipline on Sergeant Hill. Specifically, appellants argue that "when the arbitrator determines there was just cause for disciplining an employee, the

arbitrator also has authority to review and modify the type of discipline imposed" and "does not need additional specific contractual provisions to provide permission to review and modify discipline if it is deemed excessive." In other words, appellants contend that the just cause standard for discipline contained in the CBA gave the arbitrator full authority to review the appropriateness of the discipline on Sergeant Hill and, once he determined that just cause existed for disciplinary action, to impose whatever sanction or remedy the arbitrator deemed appropriate under the circumstances. We disagree.

{¶34} In *Bd. of Trustees of Miami Twp.*, the city terminated a police officer for theft in office. *Id.* at 269-270. The arbitrator found that there was no just cause to discipline the officer for theft in office but that there was sufficient just cause to discipline the employee for having been untruthful. *Id.* at 271. The arbitrator determined that the appropriate sanction for having been untruthful was a 30-day suspension and restitution of the money he took, overturning his termination. *Id.* The township filed a complaint in the common pleas court requesting that the court vacate the arbitrator's award and reinstate the officer's termination. *Id.* at 270. The common pleas court upheld the arbitrator's award and ordered that the officer be reinstated. *Id.* The court of appeals reversed and remanded the matter for a new arbitration hearing. *Id.* The union appealed to the Ohio Supreme Court, which accepted discretionary review of the case, and reversed the judgment of the appellate court and reinstated the trial court's judgment. *Id.* at 270, 274.

{¶35} The township argued that once the arbitrator determines that there was just cause to discipline an employee, the arbitrator must defer to the decision of the employer

as to the type of discipline imposed. *Id.* at 271. The union argued that once an arbitrator determines there is just cause to discipline an employee, the arbitrator has the authority to review the appropriateness of the discipline imposed. The court agreed with the union, explaining that "unless otherwise restricted by the collective bargaining agreement, the arbitrator has the authority to review the type of discipline imposed":

> "[T]he parties to a collective bargaining agreement can not anticipate every possible breach of the agreement that may occur during its life and then write an appropriate remedy for each such situation into the agreement. This fact does not, however, preclude an arbitrator from awarding a remedy." [*Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio v. Cincinnati*, 63 Ohio St.3d 403, 405, 588 N.E.2d 802 (1992).] Specific to the case at bar, the parties cannot anticipate the type of discipline appropriate to every possible infraction, and thus without further instruction from the collective bargaining agreement, the arbitrator must be able to review the type of discipline. Accordingly, we hold that where an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to review the appropriateness of the type of discipline imposed.

*Id.* at 272.

{¶36} The court held that the language of the collective bargaining agreement at issue did not prevent the arbitrator from reviewing the appropriateness of the type of discipline imposed because "[t]he only stated restriction [in the agreement] is that 'the arbitrator shall have no power to add to, subtract from, or change any of the provisions of this Agreement.'" *Id.* The court further noted that "[i]n fact, the agreement invites review by stating that 'discipline shall take into account the nature of the violation, the employee[']s record of discipline and the employee's record of performance and

conduct'" and that under such a provision "the type of discipline is not automatic for a particular offense." *Id.*

{¶37} The fact that an arbitrator may review the appropriateness of the discipline imposed after determining that just cause exists for discipline does not mean, however, that the arbitrator can issue an arbitration award, modifying the discipline imposed, that conflicts with the express terms of the agreement. Where, the collective bargaining agreement sets forth "predetermined" levels of discipline or otherwise limits the authority of the arbitrator to review the discipline imposed, those limitations will be enforced. *See, e.g., Ohio Office of Collective Bargaining*, 59 Ohio St.3d 177, 572 N.E.2d 71.

{¶38} In *Ohio Office of Collective Bargaining*, the Ohio Supreme Court held that the arbitrator exceeded his authority in reinstating a hospital aide after the arbitrator found she had abused a patient. Although the arbitrator found that the employee had committed abuse, the arbitrator found the employer lacked just cause for termination and chose to reinstate her, reasoning that the employer failed to give the employee proper notice and the penalty was disproportionate to the penalties that had been given to similarly situated employees. *Id.* at 182 and fn.5. The collective bargaining agreement provided: "The arbitrator shall have no power to add to, subtract from or modify any of the terms of this Agreement, nor shall he/she impose on either party a limitation or obligation not specifically required by the expressed language of this Agreement." *Id.* at 182. The collective bargaining agreement further provided, with respect to disciplinary action, that "[d]isciplinary action shall not be imposed upon an employee except for just cause" but also expressly stated "[i]n cases involving termination, if the arbitrator finds that there has

been an abuse of a patient * * * the arbitrator does not have authority to modify the termination of an employee committing such abuse." *Id.* The court held that the arbitrator's award, which modified the termination of the employee, conflicted with the express terms of the collective bargaining agreement, imposed additional requirements for termination not expressly provided for in the agreement, and could not be rationally derived from the terms of the agreement. *Id.* at 183. As such, the common pleas court properly vacated the arbitration award reinstating the employee. *Id.* at 178.

{¶39} In this case, although the arbitrator had authority to review the discipline imposed on Sergeant Hill as part of his just cause determination, that review was constrained by the CBA. Article 41.03 of the CBA sets forth the scope of the arbitrator's authority agreed to by the parties as follows:

> The *arbitrator shall have no power or authority to* add to, subtract from, or
> in any other manner *alter the specific terms of this Agreement*; nor to make
> any award requiring the commission of any act prohibited by law; *nor to*
> *make any award that* itself is contrary to law or *violates any of the terms*
> *and conditions of this Agreement.*

(Emphasis added.)[5]

{¶40} Appellants contend that the discipline levels specified in the discipline matrix were merely "guidelines" and that the arbitrator, therefore, was not compelled to follow the disciplinary matrix once he determined that just cause existed for discipline, but rather, could impose any sanction he deemed fair and appropriate. They contend that

---

[5]Article 41.03 is the same in both versions of the CBA.

the arbitrator's interpretation of the discipline matrix as "mean[ing] [that] discipline could range from a 3-10 day suspension up to termination" (given the level of the offense and Sergeant Hill's disciplinary history) and his application of that interpretation to reduce the sanction Sergeant Hill received were rationally tied to the CBA's requirement that "just cause" exist for discipline. As such, appellants contend, the arbitrator acted within his authority under the CBA and the trial court erred in substituting its interpretation and judgment for that of the arbitrator.

{¶41} In this case however — as set forth in the arbitrator's decision — the arbitrator interpreted the CBA (and its just cause standard for disciplinary action) as requiring the application of the discipline matrix to determine the appropriateness of the discipline imposed on Sergeant Hill, not that it was simply a "guideline" for an appropriate penalty. Arbitration Opinion and Award at 22 ("This arbitrator would agree that the Discipline Matrix should be applied in this case.").[6] The arbitrator then proceeded to apply the discipline matrix to the facts, concluding that based on his misconduct related to Officer Greeno and his prior disciplinary history, Sergeant Hill had committed a Step 2, Class C offense. Applying the discipline matrix, the arbitrator further determined that the appropriate discipline level for Sergeant Hill's Step 2, Class C

---

[6]Although the disciplinary policy states at article 26.1.2(V)(B)(2)(a) that "[i]n initiating discipline the employer agrees to the following forms of discipline, in accordance with the *guidelines* listed in the Disciplinary Matrix," the language used in determining the proper sanction to be imposed under the discipline matrix is mandatory, not permissive, e.g., "[i]f the involved employee has no previous violations, discipline *will* be administered under 'Step 1'"; "[s]uccessive violations *will* place the involved employee into the next step"; "[i]n the event that the involved employee progresses beyond Step 3, discipline *will* progress to 'Step 1' of the next progressive class"; "[t]he involved employee *will* then receive a disciplinary action within the range of the following scale, based upon the indicated discipline level." (Emphasis added.)

offense is Level 4 or Level 5 disciplinary action. Arbitration Opinion and Award at 23 ("The Discipline Matrix provided that for a second offense of this type, a 'level four or five' form of discipline would be in order.").

{¶42} It is here where the arbitrator exceeded his authority under the CBA. Under the discipline matrix, Level 4 disciplinary action is a 3-10 day suspension and Level 5 disciplinary action is termination. Most significantly, however, the discipline matrix expressly provides that "[i]f more than one discipline level is indicated, the Chief of Police has sole discretion in determining which of the two levels is appropriate, based on the facts of the case and history of the involved employee." Accordingly, under the plain and unambiguous language of the discipline matrix — which the arbitrator determined controlled under the CBA — only one of two discipline levels could be applied to Sergeant Hill's commission of a Step 2 Class offense: Level 4 (a 3-10 day suspension) *or* Level 5 (termination), with the Chief Horne having sole discretion between the two. Even assuming that the parties were bound by the arbitrator's misinterpretation of the discipline matrix as providing for a "range of discipline" for a Step 2, Class C offense, the arbitrator had no authority to disregard the express requirement that "[i]f more than one discipline level is indicated, the Chief of Police has sole discretion in determining which of the two levels is appropriate * * *." *See, e.g., Ohio Office of Collective Bargaining*, 59 Ohio St.3d at 180-181, 572 N.E.2d 71 ("'It is not a question of a strained interpretation by the arbitrator with which we might agree or disagree, but rather a reading of the plain language of the contract which removes from the arbitrator the authority to determine a remedy once she concludes that a certain rule has been breached.'"), quoting *S.D. Warren*

*Co. v. United Paperworkers' Internatl. Union 3*, 845 F.2d 3, 8 (1st Cir.1988)*, cert. denied*, 488 U.S. 992 (1988). There is no dispute that in the exercise of that discretion, Chief Horne chose Level 5, termination.

**{¶43}** This is not a case in which the trial court usurped the role of the arbitrator and improperly substituted its view of the facts and interpretation of the CBA for that of the arbitrator. While the arbitrator had the authority to interpret the CBA and to award an appropriate remedy under the CBA, once the arbitrator determined (1) that the discipline matrix applied in determining the appropriate sanction for Sergeant Hill's misconduct and (2) that in applying the discipline matrix, Sergeant Hill's conduct constituted a Step 2, Class C offense subject to discipline at level 4 or 5 of the discipline matrix, the arbitrator did not then have arbitral authority to modify the disciplinary action imposed, which under the discipline matrix and the CBA was within the "sole discretion" of Chief Horne. Because the CBA expressly provides that the arbitrator "shall have no power or authority to * * * alter the specific terms of the [CBA] * * * nor to make any award that * * * violates any of the terms and conditions of the [CBA]," we agree with the trial court that the arbitrator exceeded and imperfectly executed his authority under the CBA in modifying the discipline imposed on Sergeant Hill from termination (the disciplinary action imposed by Chief Horne) to a five-month suspension and reinstatement without back pay. The arbitration award, therefore, does not draw its essence from the CBA and is arbitrary, capricious and unlawful. Accordingly, the trial court did not err in vacating the arbitrator's decision. Appellants' assignment of error is overruled.

**{¶44}** Judgment affirmed.

It is ordered that appellee recover from appellants the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
MARY J. BOYLE, J., DISSENTS (WITH SEPARATE OPINION ATTACHED)


MARY J.   BOYLE, J., DISSENTING:

**{¶45}** I respectfully dissent.   It is my view that the arbitrator did not exceed his authority because the city's Disciplinary/Recognition Procedures, which include the disciplinary matrix, were not part of the parties' collective bargaining agreement. Rather, the city of Findlay created, developed, and implemented these procedures; they were not mentioned anywhere in the CBA.

**{¶46}** The CBA here provided that the arbitrator had "no power to add to, subtract from or modify any of the terms of [the CBA], nor shall he/she impose on either party a limitation or obligation not specifically required by the expressed language of this Agreement."   It did not restrict the arbitrator's authority to modify the discipline as the CBA did in *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11,*

*AFSCME, AFL-CIO*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991). In *Ohio Office*, the Supreme Court held that an arbitrator exceeded his authority in reversing an employee's termination when the CBA specifically stated that "[i]n cases involving termination, if the arbitrator finds that there has been an abuse of a patient or another in the care of the state of Ohio, the arbitrator does not have authority to modify the termination of an employee committing such abuse." There is no such restriction here limiting the arbitrator's authority.

{¶47} Therefore, once the arbitrator determined that the city had just cause to discipline Sergeant Hill, the arbitrator had broad authority to fashion a remedy. *See Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81 Ohio St.3d 269, 690 N.E.2d 1262 (1998). In *Miami Twp.*, the Ohio Supreme Court made it clear that:

> Where an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to review the appropriateness of the type of discipline imposed.

*Id.* at the syllabus.

{¶48} Thus, it is my view that it is irrelevant that the arbitrator found that the disciplinary matrix applied, but then imposed a different discipline. The arbitrator had full authority to fashion his own remedy under the collective bargaining agreement because the matrix was not part of the collective bargaining agreement. *Id.* at 273.

{¶49} In *Miami Twp.*, the Supreme Court further explained that in disciplinary cases, the arbitrator must determine "[if] the commission of the misconduct, offense, or

dereliction of duty, upon which the discipline administered was grounded, has been adequately established by the proof; and * * * if proven or admitted, the reasonableness of the disciplinary penalty imposed in light of the nature, character and gravity thereof[.]" *Id.* at 272. Therefore, even though the Disciplinary/Recognition Procedures and disciplinary matrix were outside of the CBA, the arbitrator did not exceed his authority in relying on it in part. In disciplinary-arbitration cases, an arbitrator would have a difficult time comparing the severity of discipline in similar cases or assessing the reasonableness of an employee's conduct without referencing the employer's disciplinary rules manual. *See Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588 (1st Dist.). Thus, the arbitrator here could look to the city's Disciplinary/Recognition Procedures and disciplinary matrix (even though it was extraneous to the CBA), find that it applied when conducting his assessment and rely on it in part, and still modify the city's choice of discipline under the authority of the CBA if he determined the city's discipline was not reasonable.

{¶50} Even assuming for the sake of argument that the Disciplinary/Recognition Procedures and disciplinary matrix were part of the CBA, which they are not, it is well established that an arbitrator has full discretion to fashion a remedy — "even if the remedy contemplated is not explicitly mentioned in the labor agreement." *Miami Twp.*, 81 Ohio St.3d at 273, 690 N.E.2d 1262. In this case, that would mean (again, assuming the matrix was part of the CBA) that the arbitrator could fashion any remedy — even if it was not mentioned in the matrix.

**{¶51}** It is also irrelevant that the disciplinary matrix gave the police chief the sole discretion to determine which of the two disciplinary levels applied (it stated: "If more than one discipline level is indicated, the Chief of Police has sole discretion to determine which of the two levels is appropriate[.]"). It is well established black letter law that the police chief's choice of discipline remains subject to the just cause standard set forth in the CBA. *See Miami Twp.* at syllabus. Stated another way, "management's right to make and enforce workplace rules and regulations does not carry with it an unreviewable right to determine that a violation of those rules warrants discharge for just cause." *Dayton v. AFSCME, Ohio Council 8*, 2d Dist. Montgomery No. 21092, 2005-Ohio-6392, ¶ 19.

**{¶52}** Indeed, if a city could simply add such a maxim (i.e., stating that the police chief has sole discretion to determine discipline) in its unilateral discipline policy, and it had the effect of limiting what an arbitrator could do, then all employers would have to do is include this rule in their discipline procedures to effectively remove any power from an arbitrator and bypass the collective bargaining process. This would essentially turn many decades of well-established labor law on its head.

**{¶53}** The essence of the arbitrator's ruling is that Sergeant Hill's misconduct did not warrant discharge in light of the city's failure to establish all of the allegations against him. Regardless of whether we agree with that assessment, we are not at liberty to overturn it. *S.W. Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 110, 742 N.E.2d 630 (2001).

**{¶54}** As the Ohio Supreme Court has noted, "the whole purpose of arbitration would be undermined if courts had broad authority to vacate an arbitrator's award." *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83-84, 488 N.E.2d 872 (1986). Moreover, once just cause is found, "an arbitrator is presumed to possess implicit remedial power, unless the agreement contains restrictive language withdrawing a particular remedy from the jurisdiction of the arbitrator." *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 588 N.E.2d 802 (1992) syllabus. Again, the agreement here did not have such restrictive language limiting the arbitrator's authority to fashion a remedy.

**{¶55}** It is my view that the trial court and the majority are substituting their judgment for that of the arbitrator. The arbitrator based his modification of the city's discipline relying in part on the city's own disciplinary matrix. I do not believe the arbitrator exceeded his authority in doing so. Thus, I would find that the arbitrator's award draws its essence from the collective bargaining agreement and is not arbitrary, capricious, or unlawful, and therefore I would not, under the facts of this case, "substitute [my] judgment for that of the arbitrator." *Queen City Lodge* at 407; *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities*, paragraph one of the syllabus.

**{¶56}** Accordingly, I would reverse the judgment of the trial court and reinstate the arbitrator's award modifying the city's discipline of Sergeant Hill from termination to an extended suspension of five months without back pay.